Toa Sugar Company, Plaintiff and Appellant, *v.* Galán et al., Defendants and Appellees.

Appeal from the District Court of San Juan in an Action for Acknowledgment of Servitude.

No. 2004.—Decided July 30, 1920.

Servitude—Right of Way—Apparent Sign—Third Person.—The existence of an apparent sign of servitude when the road is clearly marked by reason of the physical facts and may be seen by any person inspecting the land, is sufficient notice to third persons; but the mere existence of some footpaths and ramifications and their more or less intermittent use by the predecessor of the plaintiff or their representatives in this case, with the permission of the former owners of the property now belonging to the defendants, does not constitute sufficient notice to third persons of the existence of a servitude of right of way.

Id.—Id.—Outlet to Public Highway.—The mere fact that one of the boundaries of a property is the sea and another a more or less navigable river which is used for the transportation of the products thereof, does not exclude the possibility that the property may have no outlet to a public highway, being situated between properties belonging to other owners.

The facts are stated in the opinion.
*Mr. L. Llorens Torres* for the appellant.
*Mr. F. Soto Gras* for the appellee.

Mr. Justice Hutchison delivered the opinion of the court.

The Compañía Azucarera del Toa brought suit to establish the existence of a servitude and alleged in substance that plaintiff is the owner of a certain parcel of land described in the complaint which formerly formed a part of a larger tract called Rosario, bounded on the north by the sea; on the south by the town of Dorado and other lands; on the east by the Río de La Plata, and on the west, in part, by a property called Santa Bárbara, now owned by Pizá Brothers; that a portion of the original tract last described now belongs to defendants and is bounded on the north by the property of plaintiff; on the south by the town of Dorado; on the east by the Río de La Plata, and on the west by the property of Pizá Brothers; that there has existed in the Rosario property for a period of over thirty years a private road opened by the owners thereof for the benefit and use of the property and kept open by the successive owners; that such road runs from north to south, or from the sea to the town; that the said owners of the Rosario property proceeded to make a partition and division of the said property in a public deed, each of the owners being alloted a part of the land; that while the Rosario property was community property and at the termination of said community the owners continued to use the said road; that in the deed of partition nothing was made to appear against the existence of the said road, nor was any agreement made against its use or about a different way of using the same, nor was any reservation made in favor of any co-owner or grantee, nor was anything made to appear to that effect upon the alienation of the lots belonging to each co-owner; that a part of the said road runs through the property of the defendant, it being 715 meters in length by 6 meters wide and bounded on the north by the property of the plaintiff; on the south by the town of Dorado, and on the east and west by the property of the defendant, and the other

part of the road is on the lands of the plaintiff; that since the road was opened no change or alteration of any kind has been made in it, nor in its form, nor in its use; that the plaintiff has been using the road for the benefit and use of his property in the form and manner in which it was being used by the former owners, without any opposition or hindrance whatsoever; that the property described as belonging to the plaintiff was leased by the said plaintiff to Pizá Brothers who have been using the said road in the same way as the plaintiff and its predecessors in title; that six months ago the defendant, against the wishes of the plaintiff, closed the road on the boundary line of the property of the plaintiff, thus depriving the said plaintiff and its lessees of the use of the road, to the prejudice of its interests and depriving them of the means of access to the town, and that the defendants continue using the road for their exclusive benefit.

The complaint also contained the following paragraph:

"Furthermore, we must point out that the property of the plaintiff company, that is, the two parcels of land in question, is surrounded by other parcels of land comprising the Rosario property and has no other means of egress to a public road than the private road which crosses the said Rosario property, part of which now belongs to defendant Rosa Blanca Galán Mejía; so that the closing, interruption or obstruction of this road by the act of the defendants isolates the plaintiff company's property because it has no other outlet to a public road."

Defendants denied the essential averments of the complaint and further alleged, among other things—

"That the Rosario property, containing 606 acres of land and described in the complaint, formed one single tract or parcel of land for use as cattle pasture until October 24, 1883, and for ten years prior to that date, and during those ten years was owned in common by several persons, and when the partition of the property was made on the date mentioned, it contained only a narrow road

(*callejón*) which led, and now leads, from the town of Dorado to the dwelling-house and establishments on the property and its use is limited to communication with these establishments and to the passage of persons and cattle; that there was no other road anywhere else in the property and that at the partition of the property there were no signs of any other road than the *callejón*.

"That after the partition of the property on October 24, 1883, the land now belonging to the plaintiff was not surrounded by other properties belonging to the ownership in common of property prior to the partition, but was bounded on one side by the sea, on another by the Toa or Plata river, on another by the Santa Bárbara property, now belonging to Pizá Brothers, and on still another by the property now belonging to the defendant; and that the property of Pizá Brothers lies between plaintiff's property and a public road leading from Dorado to the ocean; and that there was and is a country or vicinal road leading from the town of Dorado to the ocean and traversing the property of Pizá Brothers and that said road and the navigable river (*vía fluvial*) form natural, short and convenient outlets from plaintiff's property.

"She contends that the defendants are third persons and that the servitude is not recorded in the registry and that neither the defendant nor her husband have participated in or had any knowledge of instruments or contracts between the former owners of their property and plaintiff's predecessors, and that when the defendant purchased her property there was no apparent sign of the servitude claimed.

"She contends that the plaintiff's property has two outlets to a public road; first, the Plata river, which is navigable all along the plaintiff's boundaries as far as the railroad bridge, the plaintiff's lands bordering on each side of the river, which is susceptible to navigation in gasoline launches and lighters; and, second, a country and public road which is in use from time immemorial for all kinds of traffic and which leads from Dorado as far as the ocean over lands of Santa Bárbara, now owned by Pizá Brothers, lying between the plaintiff's property and the Dorado highway and that the plaintiff has been using such road and the river as the only means of egress for laborers and products for more than twenty years.

"She contends that in any event the most natural and most convenient outlet to the plaintiff's property is not across the defend-

ant's property, since the distance thereover would be 3174 lineal feet as against only 2575 feet over the Santa Bárbara road.''

The facts as found by the trial judge are in part as follows:

''By a public instrument executed before notary Soto Gras on August 9, 1913, the plaintiff's property was leased to Pizá Brothers for six years beginning July 1, 1911, and subject to renewal for a further term of five years. No mention whatever is made in the said instrument of a lease of any easement of right of way in favor of this property.

''The court finds that it has been shown that a road crosses the Santa Bárbara property belonging to Pizá Brothers which is of easy access to the plaintiff's property and which leads directly to the Dorado highway or road, and that it is also an indisputable fact that for about ten years said road has been utilized for the requirements of plaintiff's property and the passage of its laborers and wagons thereover. That it has also been proved that the plaintiff's property has the means of taking out the products by the river and that it has removed products from its property by that route.

''It has not been proved that there is any road or passage on defendant's property other than that leading from Dorado to the house or establishments of that part of the Rosario property which now belongs to the defendant. The road passage further in has not been established, much less as a right vesting in the property now belonging to the plaintiff. The fact that at various times laborers have crossed the property by permission establishes nothing in favor of the existence of a servitude. The attention of the court has been called to the fact that in a certificate of land survey made by surveyor Padilla Dávila and embodied in the deed of sale of property by Dolores Arrazain to Rosa Echeveste of May 3, 1882—marked Plaintiff's Exhibit 'H'—mention is made of the 'general road (*callejón*) of the Rosario.' It is sufficient to point out that said *callejón* is referred to as one of the boundary points; that it is stated in the same certificate 'following this road' and to review the plan in order to see that such is not the road or passage from north to south which forms the object of the complaint.

''It has not been proved that when Rosa Blanca Galán acquired the property such property contained any apparent sign of servitude of right of way in favor of the property or tenement now belong-

ing to the plaintiff, nor that such right of way existed when Rosa Torrens and Pedro Martorell made the purchase. Nor was any attempt made to show the existence of the easement claimed when the dominion title proceeding was instituted to establish the ownership of Rosa Torrens and the Martorell Brothers. Moreover, it has not been proved to the court that there was any such apparent sign of servitude before the property passed to Pedro Martorell and Rosa Torrens in common ownership. As to the time the property was owned by Rosa Torrens, the court is convinced that if any one passed thereover it was by leave of the owner and not otherwise.

"It has not been shown that the plaintiff's property is surrounded by other properties of the defendant or that it has no outlet to a public road. The evidence shows that for the requirements or services of the property the plaintiff availed herself of both the river, which runs by her property and over which she took a part of her products to the factory to be ground, and of a road leading to the highway, which crosses the Santa Bárbara property and which has been in use for many years past, which road is shorter than that whose use she now claims. This Santa Bárbara property belongs to Pizá Brothers, the same firm that leases the property in whose favor it is sought to establish the easement."

The only error assigned is that the court erred in deciding adversely to plaintiff the questions of fact.

Plaintiff's action is based on section 548 of the Civil Code which reads as follows:

"The existence or (of) any apparent sign of servitude between two tenements established by the owner of both of them, shall be considered, if one of them be alienated, as a title, in order that the servitudes may continue actively and passively, unless, at the time of the division of the ownership of both tenements, the contrary be expressed in the deed of conveyance of either of them, or if the said sign is removed before the execution of such instrument."

We are inclined to agree with the appellant that the "apparent sign" takes away the condition as third persons of those acquiring the servient tenement and that the existence of the road, if clearly defined and by reason of the physical

facts obvious to any one inspecting the premises, is sufficient notice to such purchaser. 13 L. R. A. (N. S.) 132; 8 *Idem,* 418.

For the purposes of this opinion it may be conceded that the testimony for the plaintiff, if true, makes out a *prima facie* case, although somewhat vague and lacking in detail as to physical indications on the ground, and that the testimony for the defense is not so persuasive as might be desired. But the findings of the trial judge, *supra,* plainly indicate that he accepted as true the testimony for the defense as he had a right to do and from this point of view we cannot say that the judgment is contrary to the evidence. The mere circumstance that the witnesses for the plaintiff are men of financial and social standing and that those for the defendants are not such prominent citizens, is not sufficient ground for reversal. And aside from this distinction and a certain natural difference in the manner of testifying due to the varying degrees of intelligence and education, we find no reason to disturb the conclusion reached on the main issue.

The language used by the trial judge in discussing the degree of proof required to establish the visible existence of a servitude might be open to criticism in a case where the alleged servient tenement had not changed hands; but when the existence of the road is relied on as the only evidence of title against successive purchasers of such property, it would seem reasonable that the trial court should demand that the fact be clearly established.

In the case at bar, if the witnesses for the defense speak the truth, up to the time of the division of the original tract and subsequent transfers of the portion now owned by the defendants, the road in question was definitely established and clearly defined only from the town to the dwelling-house and for a few hundred meters beyond, where other buildings and establishments were located. These witnesses admit the

existence of certain cow trails with ramifications leading to the north from this point toward the sea and the more or less intermittent use of these paths by the predecessors in interest of plaintiff or by their tenants and employees with the permission of the former owners of the lands now belonging to defendants. We concur in the view of the trial court that something more than this is necessary to constitute notice of the existence of a servitude as to third persons dealing with the alleged servient tenement.

But we cannot concur in the finding by the trial judge that the property of the plaintiff was not shown to be "surrounded by others belonging to several owners," within the meaning of section 571 of the Civil Code. The paragraph of the complaint last above quoted was treated by both the court below and by the defendants as a separate and distinct cause of action and was disposed of as such by the judgment of dismissal.

The evidence showed that the property of the plaintiff was bounded as described in the complaint. The mere fact that one of the boundaries so indicated is the sea and another a more or less navigable river which serves as a means of transportation for the delivery of cane to the mill where it is ground, does not take the case out of the section mentioned. There was no serious effort to show that either the sea or the river was a suitable substitute for the right of way over the lands of defendants. Practically all of the evidence as to any other outlet was in regard to the alleged road across the Pizá property. It is reasonably clear from all the evidence that the shortest and most direct route and the one most used as a means of communication with the town of Dorado from the time of partition to the date of the lease to Pizá Brothers, if not for a considerable period thereafter, is that which traverses the lands of the defendants. Plaintiff is not shown to have any more right to pass over the Pizá property than it has to go through the plantation of

the defendants. The mere fact that Pizá Brothers, as lessees of the plaintiff, for their own convenience have traveled over their own property and have permitted their employees so to do, either in order to reach a railway station or switch or for any other purpose, does not affect the right of the plaintiff herein, nor does it matter in any event that during many years the plaintiff, or the farm laborers living on the property of the plaintiff, have utilized the road now used by Pizá Brothers, or at times and for certain purposes the river as well, as the more direct route through the property of the defendants.

The judgment, in so far as it determines the right of the plaintiff to a right of way under section 571, cannot stand. Whether or not the case should be remanded, or this court should dispose of the same on its merits, depends on other circumstances.

The so-called second cause of action was not stressed during the course of the testimony in chief for the plaintiff, but was developed somewhat more fully by way of rebuttal in order to meet the testimony adduced by the defense as to the existence of another outlet through the property belonging to Pizá Brothers. The complaint makes no tender of compensation for the establishment of a servitude under the provisions of section 571 of the Civil Code "on the payment of a proper indemnity." It is true that section 574 of the Civil Code provides that "when a tenement, acquired by sale, exchange or division, shall be surrounded by other tenements of the vendor, exchanger or part owner, the latter shall be obliged to grant the right of way without indemnity unless there is an agreement to the contrary." It may be also that the paragraph of the complaint last above quoted was intended to bring the case within the scope of this section. But the defendants insist that when the portion retained by the "vendor, exchanger or part owner" passes into the hands of third parties the obligation does not follow. The brief of

the appellant contains no very satisfactory answer to this suggestion and it is not the province of this court to conduct an independent investigation of the matter in order to meet the argument of counsel for the defendants. The defendants set up the existence of another road through the property of Pizá Brothers as a shorter and more suitable means of ingress and egress, but do not ask that Pizá Brothers be made parties to the suit. There was some testimony to show that the distance from plaintiff's property to a certain public road by the suggested alternative route was somewhat less than the length of the way through the property of defendants, but there was no evidence as to the distance from the point of intersection of the proposed alternative route with such public road to the town, nor as to the comparative convenience of the two routes as a whole, including such indefinite stretch of public road, in the light of the needs of the property belonging to plaintiff. The recent case of *Nin* v. *Rucalleda et al., ante,* page 503, contains some discussion of the rules governing such matters.

· In the case at bar there is nothing even to show whether the ground occupied by the servitude claimed under section 548 is a proper location for the establishment of a right of way under section 571. Plaintiff, apparently as a jurisdiction averment and evidently referring to the servitude sought to be established under the provisions of section 548, alleges that the same is worth more than $1,000. One of the defendants says that he "would not sell" the lands owned by his wife, the other defendant, or by the conjugal partnership, for $400 per acre. Neither of these statements was intended as suggestive of a proper measure of damages and it would hardly be fair to either of the parties to proceed to fix compensation on such a basis.

Thus it appears that while both plaintiff and defendants as well as the court below have proceeded largely on the theory that two causes of action are involved, yet but one

of these was properly developed at the trial and the record discloses no very satisfactory basis for a final determination of the other upon its merits by this court.

The judgment appealed from, in so far as the so-called second cause of action is concerned, must be reversed and the case remanded for further proceedings not inconsistent herewith, and in all other respects affirmed.

*Reversed in part.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.